# EXHIBIT 1-B

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>Arapahoe County District Court<br>7325 South Potomac St., #100<br>Centennial, Colorado  80112 | DATE FILED: December 2, 2019 2:11 PM<br>FILING ID: 35A2E28696BCF<br>CASE NUMBER: 2019CV32798 |
| **Plaintiffs:**<br><br>**DRAKE BURGER, JENNA WILTON, and ADAM HENDERSON**<br><br>v.<br><br>**Defendant:**<br><br>**BURNS & WILCOX, LTD.** | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiffs:<br>Attorneys:   Roger G. Trim, #39708<br>                      Steven R. Reid, #48771<br>                      Ogletree, Deakins, Nash, Smoak<br>                      & Stewart, P.C.<br>                      2000 South Colorado Boulevard<br>                      Tower Three, Suite 900<br>                      Denver, Colorado 80222<br>Phone Number: 303-764-6800<br>Fax Number:    303-831-9246<br>E-Mail:             roger.trim@ogletree.com<br>                      steven.reid@ogletree.com | Case No.:<br><br>Ctrm/Div: |
| **COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND** | |

Plaintiffs Drake Burger, Jenna Wilton, and Adam Henderson (collectively the "Plaintiffs"), by and through their counsel Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and pursuant to C.R.C.P 57 and C.R.S. §§ 13-51-101, *et seq.*, state as their Complaint for Declaratory Relief the following:

## PARTIES

1. Plaintiff Burger is a citizen of Adams County Colorado and currently resides at 13447 Pecos Court, Westminster, Colorado 80234.

2. Plaintiff Wilton is a citizen of Douglas County Colorado and currently resides at 15165 Yellowthroat Street, Parker, Colorado 80134.

3. Plaintiff Henderson is a citizen of Denver County Colorado and currently resides at 753 North Downing Street, Denver, Colorado 80218.

4. All three Plaintiffs are former employees of Defendant Burns & Wilcox, LTD ("Burns & Wilcox").

5. Burns & Wilcox is a Michigan corporation, with its principal place of business in Farmington Hills, Michigan. Burns & Wilcox has business operations in Colorado and is registered to do business in Colorado with the Colorado Secretary of State. Burns & Wilcox may be served in Colorado through its registered agent, Felicia Armstrong, 7807 East Peakview Avenue, Suite 400, Centennial, CO 80111.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Burns & Wilcox because it regularly conducts business in Colorado, maintains offices in Colorado, and is registered to conduct business in Colorado. This Court also has personal jurisdiction over Burns & Wilcox because it seeks to prevent Plaintiffs from working in Colorado and, as a result, its conduct and actions in Colorado have given rise to Plaintiffs' claims for relief.

7. Venue is proper in this Court pursuant to Rule 98(c) of the Colorado Rules of Civil Procedure because the Defendant is a nonresident of this state and Arapahoe County has been designated in the Complaint. Venue is also proper in this Court because Burns & Wilcox

seeks to preclude Plaintiffs from working in Arapahoe County, Colorado, among other locations.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8.      In June 2018, Plaintiff Burger accepted a position as an Insurance Broker for Burns & Wilcox. At all times, Plaintiff Burger's employment was at-will. At no time during his employment at Burns & Wilcox did Plaintiff Burger act as a manager or executive within the meaning of C.R.S. § 8-2-113.

9.      Plaintiff Burger has lived in Colorado for two and a half years and has never lived in Michigan.

10.     In October 2011, Plaintiff Wilton started working as an Assistant Underwriter for Burns & Wilcox. When Plaintiff Wilton resigned on October 30, 2019, she was a Personal Lines Product Manager. At all times, Plaintiff Wilton's employment was at-will. At no time during her employment at Burns & Wilcox did Plaintiff Wilton act as a manager or executive within the meaning of C.R.S. § 8-2-113.

11.     Plaintiff Wilton has lived in Colorado for 31 years and has never lived in Michigan.

12.     In July 2014, Plaintiff Henderson accepted a position as an Insurance Broker for Burns & Wilcox. At all times, Plaintiff Henderson's employment was at-will. At no time during his employment at Burns & Wilcox did Plaintiff Henderson act as a manager or executive within the meaning of C.R.S. § 8-2-113.

13.     Plaintiff Henderson has lived in Colorado for nine years and has never lived in Michigan.

14.     Burns & Wilcox, based in Michigan, is a wholesale insurance broker and underwriting manager.

15. While at Burns & Wilcox, Plaintiffs never transacted business with persons or entities in Michigan. Plaintiffs are licensed to sell insurance in the State of Colorado. They are not licensed to sell insurance in the State of Michigan. Therefore, they have never sold any insurance, solicited any sales, or performed any work for Burns & Wilcox in Michigan.

16. On or about December 17, 2018, Burns & Wilcox required Plaintiff Burger to sign an Individual Production Award Agreement (the "Agreement"). (*See* Ex. A.)

17. On or about January 2, 2019, Burns & Wilcox required Plaintiff Wilton to sign the Agreement. (*See* Ex. A.)

18. On or about December 5, 2018, Burns & Wilcox required Plaintiff Henderson to sign the Agreement. (*See* Ex. A.)

19. The Agreement contains a non-solicitation of clients provision that extends for two years after Plaintiffs' separation from Burns & Wilcox. The non-solicitation of clients provision states:

> Employee will not: (i) call upon, contact, solicit, divert, service, or accept any business from any Burns & Wilcox client or account for the purposes of directly or indirectly providing any services or products similar to those offered by Employer, including, but not limited to, distribution, underwriting, financing, claims, loss control and/or audits; (ii) directly or indirectly solicit, divert, service or accept on behalf of any new employer or new entity any insurance policy for a particular insured party for which insured party the Employee had provided such services or attempted to provide services in the two years prior to the end of Employee's employment with Employer. For the purposes of this Agreement, "client" or "account" shall include any insurance solicitor, insurance agent, insurance broker, insurance producer, insurance wholesaler, managing general agent, risk manager, third party administrator or otherwise with whom Employee had written, quoted or been asked to write or quote contracts and/or policies, facilitated placement or otherwise provided brokerage services to on behalf of Employer during the two (2) years preceding the date of Employee's termination and/or resignation from Employer. For the purposes of this Agreement, "account" shall include any insurance policy Employer had written, quoted or been asked to write or quote during the two (2) years preceding the date of Employee's

4

termination and/or resignation from Employer.

(*See* Ex. A, ¶ 5(d)(ii).)

20. The Agreement also contains a general non-competition provision stating:

> During Employee's employment with Employer, Employee shall not directly or indirectly engage in any action or provide support, assistance or services to any other person or entity, if such activity would constitute competition with Employer's business. This proscription shall not apply to solely passive investments to which Employee provides no advisory, consulting, employment or solicitation services.

(*See* Ex. A, ¶ 5(d)(iii).)

21. The Agreement provides that each of the provisions described above applies "during Employee's employment and for a period of two (2) years from the date of Employee's employment with Employer ends, terminates or expires, for any reason whatsoever, whether such termination or expiration is voluntary or involuntary . . ." (*See* Ex. A, ¶ 5(d).)

22. The non-competition provision, by its plain terms, is limited to activities occurring during Plaintiffs' employment at Burns & Wilcox and does not address their post-Burns & Wilcox employment conduct. However, Paragraph 5(d) of the Agreement, which purportedly covers all restrictive covenants, applies to conduct occurring two years from Plaintiffs' separation of employment from Burns & Wilcox. Due to this conflict, and based on the non-competition provision's plain terms, the doctrine of contra proferentem should apply and the non-competition provision must be interpreted to being limited solely to Plaintiffs' conduct while employed at Burns & Wilcox and inapplicable to their post-Burns & Wilcox activities.

23. Neither of the above restrictive covenants is limited to the protection of trade secrets. Rather, each restricts competition and customer solicitations irrespective of whether they will involve use of trade secrets or misappropriation.

24. The Agreement, including the non-solicitation of clients provision, is between

5

Colorado citizens (Burger, Wilton, and Henderson) and a Michigan company (Burns & Wilcox).

25. The Agreement Plaintiffs all signed contains a Michigan forum selection clause and provides, in relevant part, the following:

> Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division.

(Ex. A ¶ 7(i).)

26. The Agreement also contains a Michigan choice of law provision which states: "This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations." (Ex. A ¶ 7(i).)

27. The combined effect of the forum-selection provision and the choice-of-law provision would be to require Plaintiffs and Burns & Wilcox to resolve their disputes exclusively in Michigan, under Michigan law, notwithstanding the fact that Plaintiffs are all citizens of states other than Michigan, have never transacted business in Michigan on behalf of Burns & Wilcox nor any other entity, and have no connection to Michigan.

28. On October 30, 2019, Plaintiff Burger terminated his employment with Burns & Wilcox and accepted new employment with CRC Insurance Services, Inc. ("CRC") as an insurance broker on October 31, 2019.

29. On October 30, 2019, Plaintiff Wilton terminated her employment with Burns & Wilcox and accepted new employment with CRC as a Senior Team Leader on October 31, 2019.

30. On October 30, 2019, Plaintiff Henderson terminated his employment with Burns & Wilcox and accepted new employment with CRC as an Insurance Broker on October 31,

2019.

31. CRC is an Alabama corporation with its principle place of business and corporate headquarters located at Birmingham, Alabama. CRC, in varying degrees, competes with Burns & Wilcox. CRC has an office located at 6200 South Syracuse Way, Greenwood Village, Colorado 80111.

32. Since their resignation from Burns & Wilcox, Plaintiffs have not taken, used, nor retained any of Burns & Wilcox' confidential or trade secret information as defined in the Agreement (or any other property of Burns & Wilcox).

33. Nevertheless, Burns & Wilcox has initiated a lawsuit against Plaintiffs in the United States District Court for the Eastern District of Michigan (the "Michigan Lawsuit") based on the allegation that their employment with CRC violates provisions of the Agreement. None of the Plaintiffs have been properly served with the Complaint forming the basis of the Michigan Lawsuit and only received notice via their current employer, CRC.

34. Colorado law, through C.R.S. § 8-2-113, broadly prohibits restrictive covenants and only allows their enforcement under specific, narrowly-defined circumstances. C.R.S. § 8-2-113 embodies Colorado's overt hostility toward restrictive covenants: "Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void. . . ." Colorado law deems a customer non-solicit provision to constitute a non-competition agreement for purposes of C.R.S. § 8-2-113. *See Phoenix Capital, Inc. v. Dowell*, 2007 WL 2128330 (Colo. App. July 26, 2007).

35. Here, the only applicable exception to Colorado's general statutory prohibition on restrictive covenants would be an agreement for the protection of trade secrets.

36. Yet, the Agreements' restrictive covenants, including the non-competition and

customer non-solicitation provisions, are unlimited restrictive covenants, which are not confined to the protection of trade secrets.

37. Moreover, Plaintiffs do not have any confidential or trade secret information of Burns & Wilcox and, as such, the post-employment restrictions are not necessary to protect Burns & Wilcox' trade secrets and are void and unenforceable under Colorado law.

38. The nonsolicitation covenants in Plaintiffs' Agreements are void and unenforceable under Colorado law pursuant to C.R.S. § 8-2-113(2).

39. The noncompetition covenants in Plaintiffs' Agreements do not apply to Plaintiffs' post-Burns & Wilcox conduct. Even if the non-competition covenants were to apply to Plaintiffs' work at CRC, which Plaintiffs vigorously dispute, such covenants are void and unenforceable under Colorado law pursuant to C.R.S. § 8-2-113(2).

40. In stark contrast to Colorado's patent disdain for restrictive covenants, Michigan law has adopted a more permissive attitude toward such agreements and has adopted a laissez faire approach:

> a. An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

(MCL§ 445.774a.)

41. Contrary to Colorado, Michigan law does not have any statutory broad prohibition against non-competition agreements.

42. Because Michigan law so squarely contravenes Colorado public policy, as

expressed in Section 8-2-113(2), it should not be applied to the restrictive covenants contained in Plaintiffs' Agreements.

43.     The application of Michigan law in a Michigan forum against Plaintiffs violates Colorado's public policy because it creates the potential for enforcement of a restrictive covenant that is otherwise unenforceable under C.R.S. § 8-2-113 in an employment agreement made and performed by a Colorado employee in Colorado.

44.     Colorado public policy prohibits the use of a forum selection provision to establish jurisdiction or venue in another state and for the purpose of avoiding Colorado's general statutory prohibition on restrictive covenants.  This is particularly true where, as here, Plaintiffs have not conducted any business in Michigan on behalf of Burns & Wilcox nor any other entity nor have any other connection to Michigan.

**FIRST CLAIM FOR RELIEF—DECLARATORY JUDGMENT AS TO THE AGREEMENTS' FORUM SELECTION, VENUE, NON-SOLICIATION, AND NON-COMPETITION PROVISIONS**

45.     Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 44 of the Complaint.

46.     The customer non-solicitation provisions contained in Plaintiffs' Agreements are void and unenforceable as a matter of Colorado law.

47.     The non-competition restrictions contained in Plaintiffs' Agreements are void and unenforceable as a matter of Colorado law.

48.     Likewise, the forum-selection clause and the choice-of-law clause are similarly void and unenforceable under Colorado law because they would lead to the application of Michigan law to facilitate enforcement of a restrictive covenants that are otherwise unenforceable under C.R.S. § 8-2-113 in an employment agreement made and performed by

Colorado employees in Colorado.

49.     Plaintiffs seek declaratory relief from the Court as to the unenforceability of the nonsolicitation of customer provision, non-competition provision, forum-selection provision, and choice-of-law provision contained in the Agreements.

50.     Such a declaration is necessary to eliminate the legal risk and uncertainty involved in Plaintiffs' continued employment with CRC and resolve the controversy between the parties with respect to such employment.

51.     There is an actual existing, justiciable, and bona fide controversy between the Parties as to whether Burns & Wilcox may enforce the restrictive covenant and forum selection provisions in the Agreements against Plaintiffs in a Michigan court under Michigan law.

52.     The Court should declare the nonsolicitation of customer provision, non-competition provision, forum-selection, and choice-of-law provisions contained in the Agreements to be void and unenforceable under Colorado law in their entirety.

## SECOND CLAIM FOR RELIEF—PERMANENT INJUNCTION

53.     Plaintiffs restates and incorporates by reference the allegations contained in paragraphs 1 through 52 of the Complaint.

54.     Burns & Wilcox has initiated the Michigan Lawsuit against Plaintiffs seeking to enforce the nonsolicitation of customers provision and non-competition provision of the Agreements against them in the State of Michigan, even though the subject matter of Plaintiffs' employment and the Agreements have no relation to the State of Michigan.

55.     Plaintiffs will be irreparably harmed and will be without an adequate remedy at law unless the Court enters a permanent injunction against enforcement of the void and unenforceable nonsolicitation of customer provision, non-competition provision, forum-

selection, and choice-of-law provisions contained in the Noncompetition Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant them the following relief:

(a) A declaration that the nonsolicitation of customers provision (i.e. non-competition provision) contained in the Agreements, a true and correct copy of which is attached as Exhibit A to this Complaint, is void and unenforceable under Colorado law;

(b) A declaration that the non-competition provision contained in the Agreement, a true and correct copy of which is attached as Exhibit A to this Complaint, is void and unenforceable under Colorado law;

(c) A declaration that the forum-selection and choice-of-law clauses contained in the Agreements, in combination, are void and unenforceable under Colorado law; and

(d) A declaration that Plaintiffs' employment with CRC is not in violation of the Agreements.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully submitted, this 2nd day of December, 2019.

>OGLETREE DEAKINS NASH SMOAK & STEWART PC
>
>/s/ Roger G. Trim
>Roger G. Trim, #39708
>Steven R. Reid, #48771
>
>*Attorneys for Plaintiffs*