IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03462-PAB

DRAKE BURGER, JENNA WILTON, and ADAM HENDERSON,

    Plaintiffs,

v.

BURNS & WILCOX, LTD.,

    Defendant.

---

# ORDER

---

    This matter is before the Court on the Order to Show Cause [Docket No. 10] and Burns & Wilcox, Ltd's Response to the Court's Order to Show Cause [Docket No. 13]. On December 9, 2019, defendant Burns & Wilcox, Ltd. removed this case to federal court from the District Court for Arapahoe County, Colorado. Docket No. 1 at 1. The case was originally assigned to Magistrate Judge Scott T. Varholak. Docket No. 6. Magistrate Judge Varholak ordered defendant to show cause why the case should not be remanded to state court for lack of subject matter jurisdiction. Docket No. 10 at 5. Specifically, the magistrate judge found that the Notice of Removal failed to sufficiently allege the amount in controversy so as to satisfy jurisdictional requirements under 28 U.S.C. § 1332. *Id.* at 4.

    On January 17, 2020, defendant filed its response to the order to show cause [Docket No. 13] and an Alternative Motion for Leave to Take Jurisdictional Discovery and for a Stay of the Court's Order to Show Cause [Docket No. 14]. On February 4,

2020, plaintiffs filed a joint response to defendant's response to the order to show cause and motion for jurisdictional discovery, Docket No. 19, to which defendant replied on February 11, 2020. Docket No. 23. After the parties declined to consent to magistrate judge jurisdiction, Docket No. 20, the case was reassigned to this Court. Docket No. 22.

In every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action. *Citizens Concerned for Separation of Church & State v. City & Cty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980). Absent an assurance that jurisdiction exists, a court may not proceed in a case. *See Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005). Accordingly, the Court must determine whether defendant adequately alleged the amount in controversy and whether it has subject matter jurisdiction over this case before the case may proceed.

It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Defendant invokes 28 U.S.C. § 1332 as the basis for this Court's diversity jurisdiction. Docket No. 1 at 2. Section 1332(a)(1) states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [] citizens of different States." Defendant alleged that this matter is between citizens of different states. *See* Docket No. 1 at 4-5 (alleging that plaintiffs are citizens of Colorado and defendant is a citizen of Michigan); *see also*

Docket No. 4 at 3, ¶¶ 1-3 (plaintiffs alleging in state court complaint that they are citizens of Colorado). With respect to the amount in controversy, defendant states that

> The contract provisions at issue in this case are vitally important to Burns & Wilcox. Among other things, they ensure against the disclosure of the company's confidential information, protect the company's existing and prospective client and account relationships, preserve client goodwill, and protect the company from improper or unfair competition. If Burns & Wilcox is unable to avail itself of the protections afforded by the contract provisions, it will cost the company in excess of $75,000, exclusive of interest and costs. Accordingly, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

Docket No. 1 at 4. The magistrate judge found that this allegation was conclusory and insufficient to plausibly allege the amount in controversy. Docket No. 10. at 4. Defendant was ordered to show cause why the case should not be remanded for lack of subject matter jurisdiction. *Id.* at 5.

"In cases seeking declaratory and injunctive relief,[1] 'the amount in controversy is measured by the value of the object of the litigation.'" *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). "The Tenth Circuit has followed what has commonly been referred to as the 'either viewpoint rule' which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum." *Id.* In the context of a non-compete agreement, the amount in controversy may be satisfied by demonstrating "the amount of damages that the Defendant might claim for the Plaintiff's alleged breach of the non-compete provision," such as "the

---

[1] Plaintiffs' complaint seeks a declaratory judgment and a permanent injunction. Docket No. 4 at 10-11.

amount of profits, if any, claimed to have been lost by the Defendant as the result of the Plaintiff's alleged breach of the non-compete provision." *Econalytic Sys., Inc. v. Emerteck Corp.*, No. 09-cv-01016-MSK, 2009 WL 1286171, at *1 (D. Colo. May 5, 2009); *see also Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) (stating that, when determining amount in controversy in injunctive covenant-not-to-compete cases, courts "usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination"). "Courts have also examined the revenues generated by an employee and the revenues lost by the employer in determining whether the jurisdictional minimum has been met." *Mahoney v. Depuy Orthopaedics, Inc.*, 2007 WL 3341389, at 4 (E.D. Cal. Nov. 8, 2007). In multiple-plaintiff cases, "the 'either viewpoint rule' does not override the well[-] established principle that each plaintiff . . . must individually satisfy the amount in controversy requirement." *Lovell*, 466 F.3d at 897.

The proponent of federal jurisdiction "must affirmatively establish jurisdiction by proving jurisdictional *facts* that ma[k]e it *possible* that $75,000 [is] in play." *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) (emphasis in original). "Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id.* (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

In its response to the order to show cause, defendant makes several assertions to support its allegation that the amount in controversy in this case exceeds $75,000.

4

Defendant states that "each Plaintiff's work for B&W generated profits to B&W well in excess of $75,000[]" in 2018 and 2019. Docket No. 13 at 10. In support of this allegation, defendant submits an affidavit from Christine Tricoli, defendant's Corporate Senior Vice President and Chief of Human Resources, stating that each plaintiff's "work for B&W generated premiums well in excess of $75,000, and company profits well in excess of $75,000" in 2018 and 2019. Docket No. 13-1 at 2, ¶¶ 6, 8, 10. Additionally, defendant contends that, should the Court grant plaintiffs' requested relief and enjoin defendant from attempting to enforce the client non-solicitation clause, defendant "would be damaged in the form of lost profits, which far exceed $75,000 based on B&W's profits in past years." Docket No. 13 at 11-12 (quotation omitted). Defendant also infers from plaintiffs' complaint that they "seek[] to [protect] the value of Plaintiffs' next two years of employment" with a competing company, *id.* at 13, and alleges that "[e]ach of Plaintiffs' annual salaries for . . . 2018 and 2019, added together and not including bonuses, exceeded $75,000" and that, based on plaintiffs' salaries while employed with defendant, "it is more likely than not that Plaintiffs' salaries with [the competitor] over the next two years will not exceed $75,000." *Id.* 13-14.[2] In support, defendant cites Ms. Tricoli's affidavit stating that each employee's 2018 and 2019 salary, "added together but exclusive of bonuses, exceeded $75,000." Docket No. 13-1 at 2, ¶¶ 7, 9, 11. Defendant concedes that it does not have direct knowledge of plaintiffs' compensation at their new employer. Docket No. 13 at 14.

These allegations do not prove jurisdictional facts that demonstrate that the

---

[2]Defendant reasons that "Plaintiffs would not have left B&W for less money." Docket No. 13 at 14.

amount in controversy exceeds $75,000 and that the Court has subject matter jurisdiction. While defendant's new allegations are more detailed, they are no more informative than its allegations in the notice of removal. Defendant's statements concerning its profits, potential lost profits, plaintiffs' previous salaries contain no allegations of fact beyond that these figures "exceed $75,000." *See* Docket No. 13 at 9-14. While a party may establish the amount in controversy "in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands," *McPhail*, 529 at 954 (quoting *Meridian*, 441 F.3d at 541-42), the submitted affidavit from Ms. Tricoli simply repeats defendant's allegations verbatim with no additional information. And, to the extent that defendant alleges that, because plaintiffs' previous salaries exceeded $75,000, the current amount at stake for each plaintiff with regard to his or her current salary must be over $75,000, these allegations are speculation and are insufficient to establish the amount in controversy. *Nagim v. Abraham*, No. 11-cv-00729-CMA-MEH, 2011 WL 1211394, at *1 (D. Colo. Mar. 31, 2011) (Proof of amount in controversy "may arise in a variety of ways, . . . but conclusory assertions or outright speculation do not suffice.").

In its reply [Docket No. 23],[3] defendant submits a second affidavit from Ms.

---

[3] Defendant argues that "Plaintiffs' Response fails" because plaintiffs do not deny that (1) their income while employed by defendant exceeded $75,000; and (2) their salaries will exceed $75,000 for each of the next two years. This argument is flawed. It is defendant's burden to establish that jurisdiction exists. *Radil*, 384 F.3d at 1224. Plaintiffs' failure to disclaim defendant's jurisdictional allegations does not affect whether defendant has met its initial burden of demonstrating that the Court has subject matter jurisdiction over this case. Accordingly, defendant's argument throughout its reply asserting that plaintiffs have "conceded" the amount in controversy by failing to dispute certain facts, *see* Docket No. 23 at 2, 7, 9, is without merit.

6

Tricoli, which declares that plaintiff Henderson generated over $1,000,000 in income and "profits well in excess of $75,000" for defendant and received a salary of over $400,000 in 2018-19, Docket No. 23-1 at 3, ¶¶ 5-6; that plaintiff Burger generated over $1,000,000 in income and "profits well in excess of $75,000" for defendant and received over $200,000 in 2018-2019, *id.*, ¶¶ 8-9; and that plaintiff Wilton generated over $800,000 in income and "profits well in excess of $75,000" for defendant and was paid over $20,000 for her work in 2018-2019. *Id.* at 3-4, ¶¶ 9-10. Ms. Tricoli states that she "ha[s] spoken in only general terms about the income and profits generated by, and compensation paid to," plaintiffs so as to protect proprietary information. *Id.* at 4, ¶ 11.

Other courts have found that factual allegations similar to these are sufficient to adequately allege the amount in controversy. In *Mahoney*, the plaintiff sought injunctive relief precluding the enforcement of a covenant not to compete. 2007 WL 3341389, at *1-2. To establish federal jurisdiction, the defendant submitted declarations setting out the amount of the plaintiff's sales generated for the defendant and the amount of commission paid by the defendant to the plaintiff for the time period immediately preceding the employment dispute. *Id.* at *3 (stating that the plaintiff had "generated in excess of $2.37 million" in sales and had received "in excess of $250,000 in commissions"). The court determined that, while the precise amounts of lost profits had not been established by the defendant, the evidence allowed the court to infer that the plaintiff's sales had generated more than $75,000 in net profits for the defendant. *Id.* at *5. Likewise, in *Luna*, the plaintiff sought an injunction preventing enforcement of a covenant not to compete. 575 F. Supp. 2d at 1170. In support of federal jurisdiction,

7

the defendant submitted a declaration demonstrating that the plaintiff's sales exceeded $6,000,000 for the preceding year and that the net profit on the sales was $1,944,688. *Id.* at 1173. The court found that the defendant had satisfied the amount in controversy requirement of diversity jurisdiction. *Id.* at 1175.

The Court finds that the factual allegations in Ms. Tricoli's second affidavit sufficiently prove jurisdictional facts by a preponderance of the evidence and demonstrates that it is more likely than not that the amount in controversy exceeds $75,000. Once these jurisdictional facts have been established, "a defendant (like a plaintiff) is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake." *McPhail*, 529 F.3d at 954. Here, defendant has set forth sufficient facts to preclude a finding that it is legally certain that less than $75,000 is at stake for each plaintiff in this litigation. The Court finds that it has subject matter jurisdiction over this case and will discharge the magistrate judge's order to show cause.

Wherefore, it is

**ORDERED** that the Order to Show Cause [Docket No. 10] is **DISCHARGED**. It is further

**ORDERED** that Burns & Wilcox, Ltd.'s Alternative Motion for Leave to Take Jurisdictional Discovery and for a Stay of the Court's Order to Show Cause [Docket No. 14] is **DENIED AS MOOT**. It is further

**ORDERED** that Plaintiffs' Motion to Stay Briefing Pending Resolution of Whether the Court has Subject Matter Jurisdiction [Docket No. 17] is **DENIED AS MOOT**. Plaintiffs' response shall be filed within twenty-one days after the entry of this order.

DATED February 24, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge